NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0544n.06

No. 15-6244

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Sep 22, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| QUADRICUS DEAN, | ) | WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: DAUGHTREY, GIBBONS, and COOK, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. The defendant, Quadricus Dean, was stopped by police after he pulled his car out of a parking lot and across five lanes, nearly striking a police car, and then swerved into the next lane, almost hitting a second car. During the traffic stop, Dean appeared confused and an officer detected the odor of marijuana, so the officers removed Dean from the vehicle and searched it. The search uncovered marijuana, cocaine, and a handgun, and Dean was charged with being a felon in possession of a firearm. After his motion to suppress the evidence from the traffic stop was denied, Dean pleaded guilty and was sentenced. He now appeals the denial of his motion to suppress and the portion of the supervised-release condition in his written judgment that was not pronounced orally at the sentencing hearing. Finding no clear error, we affirm the denial of the motion to suppress. However, because the government concedes that the district court abused its discretion in

imposing the additional supervised-release condition, we remand this matter for entry of an amended judgment that conforms to the supervised-release condition announced at sentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

Dean was charged with being a felon in possession of a firearm. He moved to suppress the evidence supporting the charge, which was obtained from a search of his car during a traffic stop. A magistrate judge conducted a suppression hearing, in which three witnesses testified. The government called Officers Beasley and Neely, the policemen who stopped Dean, searched his car, and arrested him. The defense called Victoria Peeples, Dean's fiancée, who witnessed the events leading up to the stop.

Beasley testified that he was driving his marked patrol car eastbound on Winchester Road around 8:00 PM on his way to respond to an alarm. He witnessed a vehicle rapidly pull out of the parking lot of the Super Center Laundromat and cross five lanes, entering the lane in which Beasley was traveling. The vehicle entered the lane less than one car length in front of Beasley, who had to slam on his brakes to avoid a collision. The vehicle then maneuvered into the adjacent lane without signaling, almost striking a second vehicle. Beasley turned on his lights and initiated a traffic stop. After driving less than 0.2 miles on Winchester, the offending driver turned left on Kirby Road and stopped immediately.

Beasley approached the vehicle, which was being driven by Dean, and asked Dean for his driver's license and insurance information. Dean appeared dazed and just stared at Beasley for a few seconds, appearing not to understand the request. This lasted longer than the "normal time" of 15 to 20 seconds in which individuals usually can produce a driver's license. Dean then began reaching under his seat and between the seat and the center console. Around this time, Neely,

who was standing on the passenger side of the car, gave Beasley a sign indicating that he could smell marijuana. Beasley could not smell marijuana because he "had some type of sinus infection." Beasley asked Dean to exit the vehicle, placed him in handcuffs, and moved him to the back seat of the police car.

Neely testified that he was driving ahead of Beasley on Winchester, and he turned around after he saw Beasley initiate the traffic stop. When he arrived at the stop, Neely observed Dean looking confused and as if "he . . . didn't know what was going on, [or] what was [sic] the questions being asked." Neely testified that Dean did not say anything and was "[k]ind of baffled about why he was being stopped." Neely observed Dean searching around and digging under his seat. Neely noticed the "smell of raw marijuana coming from the vehicle" and conveyed this to Beasley. At the suppression hearing, Neely did not recall whether the passenger's side window of the car was rolled down when he smelled marijuana. He testified that the amount of time between when Beasley approached Dean's car and when Dean was removed from the vehicle "wasn't that long at all" and could be measured "in seconds."

Once Dean had been removed from the vehicle, Neely searched the car for contraband. Inside the center console, he found a handgun, ammunition, 1.16 grams of marijuana in a plastic bag, 2.55 grams of powder cocaine, 16.43 grams of crack cocaine, scales, and a spoon. Neely also found Dean's driver's license underneath and slightly behind the driver's seat. After Neely located the contraband, Dean was arrested.

Peeples, the defense witness, offered a different version of the events leading up to the traffic stop. She testified that she was taking a break from her job at the Super Center Laundromat on Winchester when Dean pulled into the parking lot and talked with her for about

ten minutes. Peeples said that she watched Dean wait with his left blinker on for 10 to 20 seconds before pulling out onto Winchester. According to Peeples, after Dean pulled onto Winchester, she continued to watch for about 10 seconds but did not see any police cars or see Dean swerve or come into close contact with another vehicle. Peeples said that she then returned to work and did not see the traffic stop or the events that followed.

After hearing the witnesses' testimony and the parties' arguments, the magistrate judge issued a report and recommendation, in which he found the officers' testimony to be credible and adopted their version of events. The magistrate judge credited the officers' testimony over Peeples's because of Peeples's close relationship with Dean, the witnesses' demeanor, and "the fact that the officers were in the process of responding to an alarm call and terminated their response in order to stop Dean's vehicle." The judge concluded that Beasley had probable cause to stop Dean because Beasley witnessed Dean committing traffic violations. The magistrate judge also found that the officers had probable cause to search Dean's vehicle based on the odor of marijuana Neely detected. The magistrate judge recommended that Dean's motion to suppress be denied, and the district court adopted the recommendation over Dean's objection, giving great deference to the magistrate judge's credibility determinations.

Dean pleaded guilty, reserving the right to appeal the denial of his motion to suppress. The district court sentenced Dean to 87 months of imprisonment, and this appeal followed.

**DISCUSSION**

**Denial of Motion to Suppress**

In an appeal from the district court's denial of a motion to suppress, we review the district court's findings of fact for clear error, its legal conclusions *de novo*, and the evidence in

the light most favorable to the government. *United States v. Jackson*, 682 F.3d 448, 452 (6th Cir. 2012). A district court's factual finding is clearly erroneous when, "although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Worley*, 193 F.3d 380, 384 (6th Cir. 1999) (internal quotation marks and citation omitted).

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. A traffic stop is a seizure, and any evidence obtained from a traffic stop that is unreasonable, or illegal, must be suppressed. *Jackson*, 682 F.3d at 453. "It is well established that a police officer lawfully may stop a car when he has probable cause to believe that a civil traffic violation has occurred, or reasonable suspicion of an ongoing crime." *Id.* If probable cause supports a traffic stop, then the officer's subjective intent in initiating the stop is irrelevant. *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008).

A warrantless search also violates the Fourth Amendment, except in limited circumstances. The "automobile exception" to the warrant requirement "allows officers to search a vehicle without a warrant if they have probable cause to believe that the vehicle contains evidence of a crime." *United States v. Galaviz*, 645 F.3d 347, 355 (6th Cir. 2011) (internal quotation marks and citation omitted). "Probable cause is a reasonable ground for belief supported by less than prima facie proof but more than mere suspicion." *Blair*, 524 F.3d at 748.

Dean challenges the district court's finding that the officers' testimony was credible and its resulting conclusion that the traffic stop was supported by probable cause. While acknowledging the great deference owed to the magistrate judge's credibility determinations, he asserts that no reasonable fact finder could have found the officers to be credible because their

testimony was inconsistent and implausible. Dean points out that Beasley and Peeples, the only two witnesses to the moments leading up to the traffic stop, offered contradictory accounts. Dean asserts that Beasley's account of Dean's maneuvers when exiting the Super Center Laundromat must be false because it is implausible that Dean would pull across five lanes of traffic directly in front of an oncoming police car and that Neely would fail to notice such reckless driving in his rearview mirror. He also points to the fact that he was not charged with any driving infractions as support for his argument that the reckless driving about which Beasley testified did not occur. In Dean's view, these factors add up to the inescapable conclusion that Beasley's testimony was not credible.

Put simply, Dean's arguments fail to persuade us that the lower court's credibility finding was clearly erroneous. Although it certainly is unwise to pull across five lanes of traffic and almost collide with a police car, it is not implausible that a driver would do so, particularly if that driver were under the influence of drugs. This conclusion is bolstered by the fact that Dean behaved strangely during the traffic stop and that drugs were found in his car. Moreover, it is perfectly plausible that Neely would not witness Dean's reckless driving in his rearview mirror if Neely's attention was focused on the road ahead when it occurred. The lack of driving-related charges in Dean's arrest ticket also fails to prove that he did not drive recklessly. In light of the more serious charges Dean faced after the police found drugs and a gun in his car, Beasley reasonably may have decided to forego the misdemeanor driving charges, even though Dean's behavior would have supported such charges.

The magistrate judge heard all of the testimony, observed the witnesses' demeanor, and adopted his own permissible interpretation of the testimony, rather than the interpretation Dean urges. "[W]here there are two permissible views of the evidence[,] the district court's

conclusions cannot be clearly erroneous." *Worley*, 193 F.3d at 384 (internal quotation marks and citation omitted). Therefore, even assuming we find Dean's interpretation of the testimony to be a permissible one, we cannot rule in his favor. We conclude that the district court's factual findings were not clearly erroneous and, thus, that the court did not abuse its discretion in holding that probable cause supported the traffic stop.

Dean also challenges the district court's ruling that the officers had probable cause to search his vehicle based on the odor of marijuana. We have held that "an officer's detection of the smell of marijuana in an automobile can by itself establish probable cause for a search." *United States v. Johnson*, 707 F.3d 655, 658 (6th Cir. 2013) (internal quotation marks and citations omitted). Therefore, the magistrate judge's finding that the officers had probable cause to search Dean's car turned on the credibility of Neely's testimony that he smelled raw marijuana coming from the vehicle.

Dean points out that his car contained only "approximately one gram of marijuana" located in a plastic bag and enclosed in the center console and that Beasley did not smell marijuana. The magistrate judge found it to be improbable that Neely's nose detected the smell of the marijuana in the center console, but he hypothesized that the odor could have come from marijuana that recently had been in the vehicle.

We must review the factual findings of the magistrate judge, who had the opportunity to observe the live testimony, for clear error, and in this case we cannot say that the court clearly erred in finding Neely's testimony to be credible. The court's theory that a larger quantity of marijuana previously was in Dean's car and gave rise to the odor is plausible given Dean's dazed demeanor and the presence of marijuana in his car. Finding no clear error in the factual findings

supporting the lower court's probable-cause determination and in the absence of any legal error, we uphold the denial of Dean's motion to suppress.

**Supervised Release Condition**

Dean's second issue on appeal concerns the written judgment entered after his sentencing. At the sentencing hearing, the district court stated, "He needs to participate in drug testing and treatment as directed by his probation officer." The written judgment reads:

> The defendant shall participate as directed in a program (outpatient and/or inpatient) approved by the Probation Officer for treatment of narcotic addiction or drug or alcohol dependency which may include testing for the detection of substance use or abuse. Further, the defendant shall be required to contribute to the costs of services for such treatment not to exceed an amount determined reasonable by the Probation Officer.

Thus, the written judgment added the requirement that the defendant contribute to the costs of treatment in an amount determined by the Probation Officer.

The government concedes that the district court abused its discretion by adding an additional supervised-release condition in the written judgment that was not pronounced at sentencing. We therefore remand the sentencing order to the district court for entry of an amended judgment that conforms to the oral pronouncement of the supervised-release condition at sentencing.

## CONCLUSION

The district court did not clearly err in finding Beasley's and Neely's testimony to be credible and, as a result, correctly determined that they had probable cause to stop Dean and search his car. We therefore AFFIRM the court's denial of Dean's motion to suppress. However, the government concedes that the district court abused its discretion by adding a condition to the supervised-release portion of the written judgment. We REMAND this matter to

the district court with instructions to enter an amended judgment that conforms to the oral pronouncement of the conditions of supervised release at the sentencing hearing.