RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0377p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 19-2229

SHAUNTAE HILL,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:19-cr-00053-1—Paul Lewis Maloney, District Judge.

Decided and Filed:  December 9, 2020

Before:  BATCHELDER, WHITE and BUSH, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:**  Matthew M. Nee, NEE LAW FIRM, LLC, Westlake, Ohio, for Appellant.  Vito S. Solitro, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

_____

## OPINION

_____

JOHN K. BUSH, Circuit Judge.  Shauntae Hill appeals his 144-month prison sentence, imposed after he pleaded guilty to one count of possession with intent to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii).  Hill argues that the district court erred in two ways.  First, Hill contends that he should not have been classified as a career offender at sentencing because his past Michigan convictions do not qualify as controlled substance offenses under USSG § 4B1.1.  Second, Hill argues that he should have

been given an offense-level reduction for being a minor participant under USSG § 3B1.2.  For the following reasons, we **AFFIRM** Hill's sentence.

**I.**

On November 8, 2018, Hill drove his cousin, Robert Henderson, to a controlled drug buy, where Henderson sold an undercover officer 83.5 grams of methamphetamine.  Less than two weeks later, Henderson met an undercover investigator at a hotel for another controlled purchase and, upon explaining that he did not have the drugs with him, called Hill to bring the drugs to the hotel.  Hill's sister drove Hill to the hotel.  Once she parked the car, police surrounded the vehicle.  They removed Hill from the vehicle, noticed a bulge in his groin area, and recovered approximately five ounces of crystal methamphetamine from Hill's person.  After officers advised him of his *Miranda* rights, Hill said that Henderson had asked him to get the drugs on Henderson's behalf and that Hill then delivered them to the place of arrest.  Hill also denied knowledge of the November 8 transaction.  Hill later explained to a probation officer that Henderson had asked Hill to hold drugs for him while Henderson waited for a call to sell the drugs.  Henderson offered Hill $50.00 for his assistance.

Hill was indicted for one count of aiding and abetting the distribution of fifty grams or more of methamphetamine (Count 1) and one count of possession with intent to distribute fifty grams or more of methamphetamine (Count 2).  Hill pleaded guilty to Count 2.  In his plea agreement, Hill stipulated that he had been convicted of felonies in violation of Michigan Compiled Laws § 333.7401(2)(a)(iv), that he served over twelve months in prison for each felony, and that his release from his term of imprisonment for each offense was within fifteen years of the commission of the offense charged in Count 2 of the indictment.  In doing so, he acknowledged that he had "at least one 'serious drug felony' conviction" under 21 U.S.C. § 802(57).

Hill objected to the presentence report's imposition of the career-offender enhancement and its failure to apply the mitigating-role adjustment.  At the sentencing hearing, the district court denied both of Hill's objections, finding Hill's initial guideline range to be 262 to 327 months.  The government moved for a downward departure of six levels from the guidelines

range under USSG § 5K1.1 and for a release from the fifteen-year mandatory minimum sentence based on substantial assistance Hill rendered to the government.  The district court granted the government's motion, which reduced Hill's guideline range to 140 to 175 months, at Level 28, Criminal History Category VI.  As such, the district court imposed a sentence of 144 months' imprisonment, to be followed by ten years of supervised release.  Hill timely appealed his sentence.

## II.

Hill argues first that he should not have been classified as a career offender under USSG § 4B1.1(a).  Second, he contends that the district court should have applied a mitigating-role adjustment to his sentence under USSG § 3B1.2.  We address each argument in turn.

### A.  Career-Offender Enhancement

We review de novo whether a prior conviction qualifies for career-offender status under USSG § 4B1.1.  *United States v. Havis*, 927 F.3d 382, 384 (6th Cir. 2019) (en banc) (per curiam).

Hill argues that his 2009 and 2010 convictions under Michigan Compiled Laws § 333.7401(2)(a)(iv) should not contribute toward his classification as a career offender because the Michigan statute includes "attempted transfer" in its definition of "deliver."  Mich. Comp. Laws §§ 333.7105(1), 333.7401(1).  Hill asserts that the inclusion renders his convictions outside the scope of a controlled substance offense because we held in *Havis* that attempt crimes are not controlled substance offenses under the guidelines.  *See* 927 F.3d at 387.  In relevant part, USSG § 4B1.1(a) defines a career offender as a defendant who committed a felony controlled substance offense as an adult who "has at least two prior felony convictions of either a crime of violence or a controlled substance offense."  USSG § 4B1.1(a).  A controlled substance offense is an "offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense."  USSG § 4B1.2(b).

Hill raises multiple arguments to support his contention that convictions under Mich. Comp. Laws § 333.7401(1) cannot constitute controlled substance offenses for the purpose of the career offender enhancement because the definition of "deliver" includes "attempted transfer." In ruling against Hill, the district court relied on the technical distinction between completed and attempted offenses. *See United States v. Havis*, 929 F.3d 317, 319–20 (6th Cir. 2019) (Sutton, J., concurring in the denial of rehearing en banc reconsideration). Because we have decided this issue in the time since the parties submitted their briefs, we agree with the district court's determination. *United States v. Thomas*, 969 F.3d 583, 585 (6th Cir. 2020) (per curiam). In *Thomas*, we explained that Michigan's definition of "delivery" mirrors exactly the federal definition of both "distribution" and "delivery": "the actual, constructive, or attempted transfer" of a controlled substance. *Id.* (quoting 21 U.S.C. § 802(8), (11) and Mich. Comp. Laws § 333.7105). For that reason, we rejected the argument "that Michigan has defined delivery more broadly than federal law to include 'attempt crimes'" in violation of *Havis* because "delivery" under both Michigan and federal law includes only "attempted transfer," not "attempted delivery." *Id.* (quoting *United States v. Garth*, 965 F.3d 493, 496–97 (6th Cir. 2020)). Because an "attempted transfer" constitutes a completed delivery rather than an attempt crime, Michigan's definition of "delivery" differs from that in *Havis*, in which the parties had agreed that Tennessee's delivery statute encompassed attempted delivery. *Id.*

We therefore conclude that the district court correctly classified Hill as a career offender.

**B. Mitigating-Role Adjustment**

A defendant must prove facts that would support a sentence reduction under the guidelines by a preponderance of the evidence. *United States v. Jackson*, 55 F.3d 1219, 1224 (6th Cir. 1995). We review the district court's conclusions regarding the defendant's role in criminal activity for clear error. *Id.*

Hill argues that the district court should have considered him a minor participant because of the "small role" he played in the drug transaction, as he was not "essential" and his intended benefit of $50 was not relatively high compared to a "sophisticated or even a relatively disorganized drug trafficking endeavor." *See* USSG § 3B1.2(b). The mitigating-role adjustment

for a minor participant in a criminal activity allows for a 2-level reduction in offense level under the guidelines. *Id.* That reduction applies to defendants who are "less culpable than most other participants, but whose roles could not be described as minimal." *United States v. Tatum*, 462 F. App'x 602, 607 (6th Cir. 2012) (quoting USSG § 3B1.2, comment (nn.4–5)).

The district court found that the mitigating-role adjustment did not apply to Hill based on the quantity of drugs involved, recognizing that the existence of a "larger player" in the drug scheme did not necessarily entitle Hill to the reduction. The district court agreed with the government's position in its sentencing memorandum, which argued that Hill "understood the scope and structure of the simple drug deal," "played an essential role in storing and delivering the drugs," "involved another person" in the transaction, and "was going to benefit from the" transaction.

Here, the government argues that career offenders are not even eligible for a mitigating-role adjustment. Indeed, nine other circuits have held that mitigating-role adjustments do not apply to career offenders, at least where, as here, the otherwise applicable offense level is lower than the offense level in the career offender table, and we have joined them in at least one unpublished case. *See United States v. Smith*, 60 F. App'x 588, 589–90 (6th Cir. 2003) ("This issue, although not settled in a published Sixth Circuit decision, is settled nonetheless."); *see also United States v. Johnson*, 155 F.3d 682, 684 n.4 (3d Cir. 1998) (detailing cases from the First, Seventh, Eighth, Ninth, and Eleventh Circuits); *United States v. Jeppeson*, 333 F.3d 1180, 1184 (10th Cir. 2003); *United States v. Perez*, 328 F.3d 96, 97–98 (2d Cir. 2003); *United States v. Cashaw*, 625 F.3d 271, 274 (5th Cir. 2010). The text and structure of the Sentencing Guidelines support this view. In particular, the sequence of the Sentencing Guideline Application Instructions demonstrates that once career-offender status is imposed, a court may impose a downward adjustment only for acceptance of responsibility. *Johnson*, 155 F.3d at 683 (citing USSG § 1B1.1). USSG § 1B1.1 instructs a sentencing court to "[a]pply the adjustments as appropriate related to victim, role, and obstruction of justice from Parts A, B, and C of Chapter Three" before moving on to "[d]etermine from Part B of Chapter Four any other applicable adjustments"—which include the career-offender adjustment. USSG § 1B1.1(a)(3), (6); *Johnson*, 155 F.3d at 684.

Moreover, USSG § 4B1.1(b) assumes that a court has already calculated the "offense level otherwise applicable" when it selects the offense level for a career offender. *Id.* ("Except as provided in subsection (c), if the offense level of a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply. A career offender's criminal history category in every case under this subsection shall be Category VI."); *Johnson*, 155 F.3d at 684. In other words, if the "otherwise applicable" offense level is lower than USSG § 4B1.1(b)'s prescribed offense level, then the latter controls: USSG § 4B1.1, therefore, overrides any previously applied reduction on the basis of a mitigating role. USSG § 4B1.1(b); *Johnson*, 155 F.3d at 684. The only exception to that rule exists for reductions on the basis of acceptance of responsibility: "If an adjustment from § 3E1.1 (Acceptance of Responsibility) applies, decrease the offense level by the number of levels corresponding to that adjustment." USSG § 4B1.1(b) (n.*). According to the *inclusio unius est exclusivo alterius* principle, the presence of only one path to reducing a career offender's sentence implies that other downward adjustments are inapplicable. *Smith*, 60 F. App'x at 590.

Because we agree with our sister circuits that the only reduction available to career offenders whose offense level is controlled by USSG § 4B1.1(b) is USSG § 3E1.1's adjustment for acceptance of responsibility, the question whether the district court should have applied the mitigating-role adjustment to Hill's sentence is moot.

**III.**

For the foregoing reasons, we **AFFIRM** Hill's sentence.