RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0084p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 20-1047

JOHN LOUIS BOOKER, JR.,

*Defendant-Appellant*.

───────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:19-cr-00177-1—Paul Lewis Maloney, District Judge.

Decided and Filed: April 14, 2021

Before: GIBBONS, COOK, and LARSEN, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:** John F. Clark, CLARK LAW FIRM PLLC, Detroit, Michigan, for Appellant. Alexis M. Sanford, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

───────────────

## OPINION

───────────────

LARSEN, Circuit Judge. John Booker pleaded guilty to one count of distributing a controlled substance in violation of 21 U.S.C. § 841(a)(1). The district court sentenced Booker as a career offender under U.S.S.G. § 4B1.1, resulting in a prison term of 188 months. The district court also imposed a six-year term of supervised release with special conditions of supervision. On appeal, Booker challenges his career-offender status and his supervision conditions. We AFFIRM.

I.

In spring 2019, an undercover police officer was investigating a suspect named Julius Walker for narcotics offenses. The officer arranged on several occasions to purchase methamphetamine from Walker. John Booker accompanied Walker to one of these pre-arranged sales, and it was Booker who handed the officer Walker's drugs. Booker used this opportunity to let the officer know that he could offer methamphetamine at a better price. Booker then gave the officer his cell phone number. Over the course of the next month, Booker sold methamphetamine to the officer on three separate occasions.

Things unraveled for Booker at his fourth planned sale to the officer. Booker noticed police cars at the initial planned meeting location. He ultimately ended up fleeing, first by car—with a passenger and her two-year-old daughter in tow—and then on foot. Police eventually caught up with Booker. Once they apprehended him, officers dialed the phone number that Booker had used to arrange sales with the undercover officer. Booker's cell phone rang. He was arrested.

A federal grand jury indicted Booker on four counts of distributing methamphetamine in violation of 21 U.S.C. § 841(a)(1). Booker pleaded guilty to the fourth charge, and the other three were dismissed. The district court sentenced Booker as a career offender based on his prior state convictions for unarmed robbery and for the "deliver[y]/manufacture" of a controlled substance. *See* U.S.S.G. § 4B1.1(a). That classification increased his offense level by two, making his advisory Guidelines range 188 to 235 months' imprisonment. The district court sentenced Booker to a 188-month prison term and 6 years of supervised release. The court also imposed special supervised release conditions. Booker now appeals his sentence.

II.

Booker argues that he should not have been sentenced as a career offender and that the district court did not adequately explain its decision to apply the enhancement. Both claims fail.

A.

Because Booker challenged his career-offender status below, we review the application of this enhancement de novo. *United States v. Havis*, 927 F.3d 382, 384 (6th Cir. 2019) (en banc) (per curiam). To be a career offender, a defendant must have at least two prior felony convictions that qualify as "controlled-substance offenses" or "crimes of violence." *United States v. Garth*, 965 F.3d 493, 495 (6th Cir. 2020) (citing U.S.S.G. § 4B1.1). The defendant's instant offense of conviction must also fall into one of those categories. U.S.S.G. § 4B1.1(a)(2). At issue here is what constitutes a controlled-substance offense, which the Guidelines define as "an offense under federal or state law . . . that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b). To determine whether an offense meets this definition, we use the "categorical approach," which demands that "the least of the acts criminalized by the elements of th[e] statute" of conviction "fall[] within the Guidelines' definition." *Havis*, 927 F.3d at 384–85 (emphasis omitted).

Booker argues that his prior conviction under Mich. Comp. Laws § 333.7401 for the delivery or manufacture of a controlled substance and his instant conviction under 21 U.S.C. § 841(a)(1) for the distribution of a controlled substance are not valid career-offender predicates. For support, he relies on *United States v. Havis*, where we held that the Guidelines' definition of "'controlled substance offenses' does not include attempt crimes." 927 F.3d at 387. Michigan law defines "delivery" as "the actual, constructive, or *attempted* transfer from [one] person to another of a controlled substance." Mich. Comp. Laws § 333.7105(1) (emphasis added). The federal Controlled Substances Act (CSA) defines "distribute" as "to deliver" and, in turn, defines "deliver" substantially the same way Michigan does: to make an "actual, constructive, or *attempted* transfer of a controlled substance." 21 U.S.C. § 802(8), (11) (emphasis added). Because both definitions include "attempted transfer," Booker contends that the least conduct criminalized by each statute is "attempted delivery," meaning that neither can be a predicate offense under *Havis*.

However, Booker admits that binding precedent forecloses his argument with respect to the Michigan statute. *See United States v. Thomas*, 969 F.3d 583, 585 (6th Cir. 2020) (per curiam). Still, he suggests that we have not yet decided whether the federal statute qualifies as a predicate offense. Yet our prior reasoning with regard to the Michigan statute maps squarely onto 21 U.S.C. § 841(a)(1). And we recently rejected an identical argument about § 841(a)(1), albeit in an unpublished opinion. *See United States v. Morton*, ___ F. App'x ___, 2021 WL 289311, at *2 (6th Cir. Jan. 28, 2021).

In *United States v. Thomas*, we held that convictions for "delivery" under Mich. Comp. Laws § 333.7401 are controlled-substance offenses. 969 F.3d at 585. We explained that the word "distribution" in the Guidelines' definition of "controlled substance offense" takes on the definition given in the CSA. *Id.*; *see United States v. Jackson*, 984 F.3d 507, 512 (6th Cir. 2021) ("[W]e routinely utilize the CSA (even after *Havis*) in defining the relevant conduct covered by the [career-offender] Guidelines."). And, as we established above, the Michigan and CSA definitions are substantially identical. *Compare* Mich. Comp. Laws § 333.7105(1), *with* 21 U.S.C. § 802(8), (11). We held in *Thomas* that "the Michigan offense of delivery" is a controlled-substance offense. 969 F.3d at 585. Essential to our reasoning was the observation that the word "distribution" has the same definition in both the career-offender Guidelines and the CSA. *See id.* Thus, *Thomas* illustrates why Booker's § 841(a)(1) conviction is a predicate controlled-substance offense.

At first blush, that reasoning might spark some confusion. If the Guidelines and relevant statutes define predicate offenses to include the *attempted transfer* of a controlled substance, then what of the rule from *Havis* that attempt crimes don't count? Our caselaw eliminates that concern along with any confusion that might stem from *Havis*. *See id.*; *Garth*, 965 F.3d at 497.

*Havis* addressed Tennessee's definition of "delivery," which is substantially identical to the Michigan and CSA definitions. *See* 927 F.3d at 384 (citing Tenn. Code Ann. § 39-17-402(6)). In *Havis*, both parties agreed that, under this definition, the least conduct criminalized by the defendant's statute of conviction was the inchoate offense of "attempted delivery." *Id.* at 385. Based strictly on the parties' shared assumption, we had occasion to decide whether the

definition of "controlled substance offense" in U.S.S.G. § 4B1.2(b) includes attempt crimes, and we held that it does not. *Id.* at 387.

But we've since determined that the parties' assumption in *Havis* was wrong. *United States v. Elliott*, 835 F. App'x 78, 81 (6th Cir. 2020); *Thomas*, 969 F.3d at 585. Federal law and Michigan law both codify attempted distribution or delivery separately from the completed offenses. *See* 21 U.S.C. § 846; Mich. Comp. Laws § 333.7407a(1); *People v. Burton*, 651 N.W.2d 143, 146 n.4 (Mich. Ct. App. 2002). We must "construe statutes, where possible, so as to avoid rendering superfluous any parts thereof." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 112 (1991); *see also Koenig v. City of S. Haven*, 597 N.W.2d 99, 104 (Mich. 1999) ("[A] court's duty is to give meaning to all sections of a statute and to avoid, if at all possible, nullifying one by an overly broad interpretation of another."). So, we have held that, under Michigan law, "an 'attempted transfer' constitutes a *completed delivery* rather than an attempt crime." *United States v. Hill*, 982 F.3d 441, 444 (6th Cir. 2020) (emphasis added) (quoting *Thomas*, 969 F.3d at 585); *see also Garth*, 965 F.3d at 497 (applying this reasoning to Tennessee's delivery statute). The same applies to the analogous provisions of the CSA. *See Garth*, 965 F.3d at 497; *United States v. Havis*, 929 F.3d 317, 319–20 (6th Cir. 2019) (Sutton, J., concurring in the denial of en banc reconsideration). Moreover, if we had taken a contrary route and held that "distribution encompasses attempted distribution," then "that would mean the guidelines' definition of controlled-substance offenses *does* include attempted crimes—the very result we rejected in *Havis*." *Garth*, 965 F.3d at 497.

It would be remarkable if Booker were right that § 841(a)(1) did not describe a "controlled substance offense" under U.S.S.G. § 4B1.2(b). In directing the Sentencing Commission to enact the career-offender Guidelines, Congress specifically instructed that "offense[s] described in . . . 21 U.S.C. [§] 841" be covered. 28 U.S.C. § 994(h)(1)(B), (2)(B); *Jackson*, 984 F.3d at 511–12. Booker would have us hold that the Sentencing Commission failed to comply with this statutory command and, consequently, that the primary federal statute criminalizing offenses related to controlled substances does not count as a "controlled substance offense" under the Guidelines. But, for the same reasons that "delivery" of a controlled substance under Mich. Comp. Laws § 333.7401 is a predicate offense, so is "distribution" of a

controlled substance under 21 U.S.C. § 841(a).  *See Thomas*, 969 F.3d at 585; *Garth*, 965 F.3d at 497.  The district court properly sentenced Booker as a career offender.

B.

Booker next argues that the district court committed procedural error by failing to address his argument that 21 U.S.C. § 841(a)(1) is not a career-offender predicate.  Booker admits that he did not object to the adequacy of the district court's explanation below, so we review only for plain error.  *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc).  Booker must "show (1) error (2) that was obvious or clear, (3) that affected [his] substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings."  *Id.* (internal quotation marks and citation omitted).

The district court specifically rejected Booker's argument at sentencing.  The court explained that it would "not make any sense whatsoever" to find that the career-offender Guidelines "do[] not include 401 convictions under the federal code."  This statement was a reference to § 401 of the CSA, which is codified in 21 U.S.C. § 841(a)(1).  *See* Pub. L. No. 91-513, § 401, 84 Stat. 1236, 1260–62 (1970).

Booker also complains that the district court did not expressly respond to his (somewhat puzzling) argument that our decision in *Costo v. United States*, 904 F.2d 344 (6th Cir. 1990), requires a different result.  *Costo* involved a double-jeopardy issue.  *Id.* at 348.  We held that attempted distribution of a controlled substance does not require any element that *completed* distribution does not.  *Id.*  That holding has no bearing on whether the least culpable conduct criminalized by the federal statute outlawing *completed* distribution qualifies as a controlled-substance offense.  Below, the district court explained that Judge Sutton's opinion concurring in the denial of en banc reconsideration in *Havis* and "[c]ongressional intent as outlined in 28 U.S. Code 994(h)" both indicate that it was proper to apply the career-offender enhancement.  Because this reasoning was logically responsive to Booker's *Costo* argument, the district court did not need to address *Costo* explicitly.  *See United States v. Chiolo*, 643 F.3d 177, 184–85 (6th Cir. 2011).  We find no error.

III.

Booker next challenges the special conditions of his supervised release.  The district court crafted special conditions mandating that Booker do the following during his six-year term of supervision: (1) provide his probation officer "any requested financial information" and allow his probation officer to release that information to the United States Attorney's Office; (2) comply with a nightly curfew; (3) refrain from the use or possession of controlled substances, including marijuana; (4) refrain from the use or possession of alcohol and "not frequent any establishments whose primary purpose is the sale and serving of alcohol"; (5) participate in a program of testing and treatment for substance abuse and "pay at least a portion of the cost, according to his ability to pay, as determined by his probation officer"; (6) submit to reasonable probationary searches; (7) comply with certain employment or community service benchmarks; and (8) not own any "cell phone or other electronic device" without the permission of his probation officer and subject to other restrictions.

A.

Booker argues that the district court "inadequately explained its reasoning for imposing these special conditions" and "fail[ed] to analyze the conditions using the factors in 18 U.S.C. § 3553(a)."  Booker did not object to his supervised release conditions below, so we review for plain error.  *United States v. Zobel*, 696 F.3d 558, 572 (6th Cir. 2012).

For a sentence to be procedurally reasonable, "the district court [must] state its rationale for mandating special conditions of supervised release in open court at the time of sentencing." *United States v. Henry*, 819 F.3d 856, 874 (6th Cir. 2016) (internal quotation marks and citation omitted).  The district court, in so doing, is required to consider factors "specified in 18 U.S.C. § 3583(c)," a requirement the court can satisfy by considering certain § 3553(a) factors. *See Zobel*, 696 F.3d at 572 (citing *United States v. Presto*, 498 F.3d 415, 419 (6th Cir. 2007)).  But we do not demand a repetitive discussion of those factors "where the special conditions of supervised release logically flow from the reasons" the district court gave "for imposing a sentence of incarceration." *United States v. Banks*, 722 F. App'x 505, 512 (6th Cir. 2018) (citing *Zobel*, 696 F.3d at 572); *see United States v. Babcock*, 753 F.3d 587, 593 (6th Cir. 2014)

("In outlining its reasons for imposing the sentence of incarceration . . . the district court was also outlining the reasons supporting the [term] of supervised release, even though the court did not do so explicitly." (alterations in original) (internal quotation marks and citation omitted)). In addition, an inadequate explanation is harmless error "if the reasons for imposing the special conditions are 'clear from the record.'" *Henry*, 819 F.3d at 874 (quoting *United States v. Collins*, 799 F.3d 554, 599 (6th Cir. 2015)).

The district court provided a thorough analysis of the § 3553(a) factors. It explained that "at a very young age, 24 years old, Mr. Booker has managed to roll up a criminal history placing him in the highest criminal history category"—and this was true even "without the application of the career offender guideline." *See* 18 U.S.C. § 3553(a)(1). Additionally, the court observed that Booker "has been impervious to rehabilitation"; a "relatively short period of time" had elapsed between Booker's last state conviction and his renewed criminal conduct. *See id.* The court "view[ed] Mr. Booker as a serious risk to re-offend," who "need[ed] to be specifically deterred." *See id.* § 3553(a)(2)(B). The court was also greatly concerned with the need to protect the public, explaining that methamphetamine "is a major problem" in its jurisdiction. *See id.* § 3553(a)(2)(C). After "consider[ing] all of the 3553 factors," the court ultimately imposed a sentence that it believed would "reflect the seriousness of the offense[,] . . . promote respect for [federal] controlled substance laws[,] . . . and provide just punishment." *See id.* § 3553(a)(2)(A).

The district court had no need to tie its discussion of the sentencing factors explicitly to Booker's supervised release conditions. *See Henry*, 819 F.3d at 874; *Babcock*, 753 F.3d at 593; *Zobel*, 696 F.3d at 572. The district court's concerns about Booker's risk of recidivism and the need to promote public safety formed the basis for both the prison term and the supervised release conditions it imposed, as the nature of the selected conditions makes clear. *See United States v. Arnold*, 549 F. App'x 491, 496 (6th Cir. 2013); *Zobel*, 696 F.3d at 572; *Presto*, 498 F.3d at 419. The district court manifestly designed these conditions to steer Booker away from his prior criminal activities and to facilitate effective monitoring by his probation officer. Because

the district court provided an adequate explanation for these special conditions, this component of Booker's sentence was not procedurally unreasonable.[1]

Booker suggests that the district court had an additional duty to explain its imposition of a probationary search condition because the Guidelines only expressly recommend this measure in relation to sex offenses. *See* U.S.S.G. § 5D1.3(d)(7)(C). Likewise, he complains that the Guidelines recommend financial disclosures in cases that, unlike Booker's, involve the payment of restitution, forfeiture, or fines. *See id.* § 5D1.3(d)(3). Yet, Booker admits that the Guidelines recognize these conditions "may otherwise be appropriate in particular cases." *Id.* § 5D1.3(d). The same rationale that supports Booker's other release conditions supports these two as well. Financial disclosure will allow his probation officer to determine his ability to pay for drug treatment, as the district court directed. It will also complicate any of Booker's future efforts to profit from trafficking illegal drugs. Similarly, the search provision will deter Booker from returning to the old habits that have placed him in the Guidelines' highest criminal history category. It would have "serve[d] no useful purpose" for the district court to "repeat its § 3553(a) analysis with respect to the supervised-release" conditions here. *See United States v. O'Georgia*, 569 F.3d 281, 289 (6th Cir. 2009); *accord United States v. Clark*, 726 F.3d 496, 501 (3d Cir. 2013).

Even if we agreed with Booker that the district court's explanation was inadequate, any error would be harmless because the record demonstrates why the district court found each condition necessary. *See Henry*, 819 F.3d at 874. As the district court said, Booker's proclivity for returning to criminal conduct shows that he "ha[d] not taken to heart the lessons that he learned from [his] prior convictions." The district court also noted the need to protect the public from the deleterious effects of drug distribution, observing that methamphetamine has been "a major problem" in the district. We find that all of Booker's special supervision conditions are tailored toward dissuading him from returning to his old unlawful practices and protecting the public from similar criminal acts. For example, the restriction on cell phone usage harkens back to Booker's regular use of a cell phone to arrange drug sales. The record indicates that any error

---

[1]Booker does not ask us to consider "[w]hether these conditions were in fact warranted," which "is a question of substantive reasonableness." *See Zobel*, 696 F.3d at 572.

in the district court's explanation of Booker's special supervision conditions was harmless,**²** *see Collins*, 799 F.3d at 599; *United States v. Berridge*, 74 F.3d 113, 119 (6th Cir. 1996), and certainly was not plain error, *see United States v. Ziska*, 602 F. App'x 284, 293–94 (6th Cir. 2015).

None of the cases that Booker cites changes this result. In *United States v. Inman*, we remanded for the district court to reconsider supervised release conditions that lacked any apparent relation to the criminal conduct at issue. 666 F.3d 1001, 1004–06 (6th Cir. 2012) (per curiam) (explaining that the district court imposed a lifetime ban on the consumption of alcohol even though "[n]othing in the record suggest[ed] that Inman ha[d] any problem with alcohol or drug[s]" and imposed a financial disclosure requirement where "Inman's crime was not financial in nature," nor a crime that benefited him financially, such as drug trafficking); *see also Zobel*, 696 F.3d at 572 (distinguishing *Inman*). Similarly, we found remand necessary in *United States v. Maxwell* because "nothing before the district court was said to have linked [the] activities [prohibited by the release conditions] to the defendant's offenses." 483 F. App'x 233, 239 (6th Cir. 2012). In *United States v. Thompson*, the government conceded that "the district court's total failure to articulate any basis for the lengthy term of supervised release or the onerous special conditions" was plain error. 509 F. App'x 449, 453 (6th Cir. 2012). And finally, in *United States v. Dotson*, we found an "absence of any statement that set[] forth the district court's actual rationale" for imposing certain broad restrictions. 715 F.3d 576, 588 (6th Cir. 2013) (quoting *Maxwell*, 483 F. App'x at 240). *Dotson* did not acknowledge our earlier decisions, which establish that a district court may "engage[] in a single consideration of the sentencing factors . . . embrac[ing] both the incarceration sentence and the supervised release term." *Presto*, 498 F.3d at 419; *see Zobel*, 696 F.3d at 572. Nor did *Dotson* grapple with controlling precedent applying plain-error or harmless-error review in the relevant context. *See, e.g.*, *United States v. Kingsley*, 241 F.3d 828, 836–37 (6th Cir. 2001); *Berridge*, 74 F.3d at 119.

---

**²**Booker intimates that our early harmless error jurisprudence is inconsistent with the procedural reasonableness requirements set forth in the Supreme Court's decision in *Gall v. United States*, 552 U.S. 38, 50 (2007), but he fails to explain how. We can find no inconsistency, and we note that we have continued to review supervised release conditions for harmless error after *Gall*. *See, e.g.*, *United States v. Blue*, 767 F. App'x 608, 612–13 (6th Cir. 2019); *Collins*, 799 F.3d at 599.

Booker's arguments therefore are not persuasive, and he has failed to establish that the district court erred, let alone plainly.

B.

Finally, Booker argues that the special supervised release conditions listed in the district court's written judgment of conviction include greater restrictions on his phone usage than those announced at sentencing. "[W]hen an oral sentence conflicts with the written sentence, the oral sentence controls." *United States v. Denny*, 653 F.3d 415, 421 (6th Cir. 2011) (alteration in original) (quoting *United States v. Penson*, 526 F.3d 331, 334 (6th Cir. 2008)). The oral sentence takes precedence because "a defendant is present only when being sentenced from the bench. Because criminal punishment affects the most fundamental human rights sentencing should be conducted with the judge and defendant facing one another and not in secret." *Id.* (quoting *Penson*, 526 F.3d at 334).

Even though Booker raised no objection to the written judgment below, this claim is not subject to plain-error review; Booker could not have raised it during his sentencing hearing before the written judgment had been issued. *See United States v. Carpenter*, 702 F.3d 882, 884 (6th Cir. 2012); *United States v. Logins*, 503 F. App'x 345, 348–49 (6th Cir. 2012); *see also* Fed. R. Crim. P. 51(b) (providing that a party shall not be prejudiced by "the absence of an objection" when the "party does not have an opportunity to object"). We review an alleged discrepancy between oral and written sentences de novo. *Carpenter*, 702 F.3d at 884; *Logins*, 503 F. App'x at 348–49.

Here, we find no discrepancy. At Booker's sentencing hearing, the district court described the disputed condition as follows:

> [Booker] is not to possess a cell phone or other electronic device without the prior permission of his probation officer. If he is given permission to have a cell phone or other electronic device, the device must be in his name or a name approved in advance by his probation officer, and he shall provide the bill for the device with each monthly report.

The district court's written judgment divided this condition into two provisions that are somewhat more detailed:

You must not possess or be the primary user of any cellular phone without prior permission from the probation officer. If given permission to use/possess a cell phone, you must provide the number to the probation officer and the phone must be maintained in your name or another name approved in advance by the probation officer.

You must provide the probation officer with your monthly cellular and home telephone bills with each monthly report form and must report any cellular telephone you have used or own on each report form.

The oral and written conditions "[b]oth convey the same message." *United States v. Lewis*, 565 F. App'x 490, 498 (6th Cir. 2012). Booker was only to have phone access with his probation officer's permission and, if given permission, would be subject to certain forms of monitoring. Nevertheless, Booker claims to spot four differences: "(1) in addition to not possessing a cell phone (without prior approval), he must also not be the 'primary user' of a phone; (2) he must provide the number to the probation officer; (3) he must provide home telephone bills; and (4) he 'must report any cellular telephone [he has] used or own[s] on each report form.'" (Alterations in original.) None of these purported distinctions is meaningful. Booker would need to "possess" a cell phone to be its primary user. His phone number would presumably appear on the bills he is required to submit to his probation officer. The district court's oral pronouncement covered any "cell phone *or other electronic device*," including a home phone. (Emphasis added.) The oral condition contemplated that Booker would need to make disclosures in his "monthly report," and the requirement that the report list any cell phone Booker owns or has used merely formalizes the enforcement of this condition. This court and others have found no discrepancy in written supervision conditions that use different language to impose substantially identical requirements. *See, e.g.*, *United States v. Thomas*, 830 F. App'x 420, 423–24 (5th Cir. 2020) ("[W]hen the pronouncement explicitly refers to the condition, despite wording it differently[,] . . . no conflict results."); *United States v. Buchanan*, 820 F. App'x 401, 405 (6th Cir. 2020); *United States v. Gaynor*, 530 F. App'x 536, 542 (6th Cir. 2013); *Lewis*, 565 F. App'x at 498.

Booker identifies two unpublished decisions where we found a written supervised release condition to conflict with the conditions announced at sentencing. *See United States v. Dean*, 657 F. App'x 503, 507–08 (6th Cir. 2016); *United States v. Hall*, 669 F. App'x 297, 298 (6th Cir.

2016) (per curiam).  Neither case does him any good.  In both, the government conceded that plain error occurred, and we offered no further analysis.  *See Dean*, 657 F. App'x at 508; *Hall*, 669 F. App'x at 298.  Each case involved a written judgment that required the defendant to pay treatment costs that the district court entirely failed to mention at sentencing.  *See Dean*, 657 F. App'x at 508; *Hall*, 669 F. App'x at 298; *see also* Hall's Br. at 20, (No. 15-6202), 2016 WL 1084879, at *20 (explaining the discrepancy in *Hall*).  *But see Thomas*, 830 F. App'x at 422–23 (upholding a requirement, stated for the first time in a written judgment, that the defendant bear some costs of court-ordered treatment); *United States v. Vega*, 332 F.3d 849, 852 (5th Cir. 2003) (per curiam) (same).  By contrast, we find that the district court below did not impose any new conditions in its written judgment.

\* \* \*

We AFFIRM.