NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0184n.06

No. 22-1275

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Apr 21, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff – Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. | ) ) ) | |
| MICHAEL MCSHAN, | ) ) | |
| Defendant – Appellant. | ) ) ) | OPINION |

Before: KETHLEDGE, WHITE, and STRANCH, Circuit Judges.

KETHLEDGE, Circuit Judge. Michael McShan repeatedly asked an underage girl to send him sexually explicit photos and videos, and the girl complied. A jury later found McShan guilty of sexual exploitation of a minor and several related charges. On appeal, McShan challenges the sufficiency of the evidence supporting the exploitation charge and the district court's explanation of his sentence. We affirm McShan's conviction; but we vacate his sentence in part, and remand.

I.

In late December 2018, McShan contacted the victim (whom we call GM) on a messaging application called Snapchat. McShan was 25 at the time; GM was 16, but told McShan she was 19.

A relationship quickly developed. Within days, the two met at a motel and had sex. By January, they were saying "I love you" and talking every day. In GM's mind, the two were boyfriend and girlfriend.

After about a month, GM told McShan that she was only 16; but he did not care. Instead, he grew controlling. He wanted to know where GM was at all times—demanding copies of her

work schedule and pictures of her location. He told GM what she should look like (skinny), what she should wear (baggy clothes), and who she should talk to (only him). When GM did something McShan disliked, he ignored or berated her—calling her a "bitch" or "worthless." Sometimes McShan even threatened to "beat [GM] black and blue."

McShan also wanted GM to send him pornographic photos and videos. He repeatedly asked for photos of her vagina and videos of her stripping, both of which she sent. He also told her to surprise him with others, so she did. McShan even bought GM a sex toy and asked her to send a video of her using it, which she did.

Then McShan's demands escalated: in June 2019, he told GM to sexually assault her 9-year-old sister and record it. GM tried, but she could not go through with it. She sent McShan a video of her attempt and begged him not to be mad.

Two months later, GM ran away from home to live with McShan. At the time, McShan lived with an elderly woman whom he thought of as a mother and a young woman named Maddie who he said was just a friend. McShan made GM clean the house and tend to his marijuana plants. He also disciplined her and Maddie—sometimes making them sit outside in the cold "with barely any clothes on." One night, GM witnessed McShan beat Maddie with a PVC pipe until she was "unrecognizable."

After six weeks, GM decided to leave. Terrified of McShan, she waited until he was asleep before fleeing on foot, walking several miles until she found a nearby airport. The police reunited GM with her parents later that morning.

The government thereafter arrested McShan. While in jail, he persuaded Maddie to tell the police that she was to blame and that she used McShan's Snapchat account to request sexual pictures and videos from GM. But her confession did not help McShan. At trial, the prosecution

proved the facts recited above, and the jury convicted McShan on five counts: sexual exploitation of a minor in violation of 18 U.S.C. § 2251(a), attempted sexual exploitation of a minor in violation of 18 U.S.C. §§ 2251(a) and (e), receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2), coercion and enticement of a minor in violation of 18 U.S.C. § 2422(b), and obstruction of justice in violation of 18 U.S.C. § 1503.

The district court later sentenced McShan to 300 months in prison and to a life term of supervised release with several special conditions—including a prohibition on being "employed or participat[ing] in any volunteer activities that involve contact with minors or adults with disabilities without prior approval of the probation officer," and a prohibition on "provid[ing] care or liv[ing] in a residence where children under the age of 18 or adults with disabilities also reside without the approval of the probation officer."

This appeal followed.

## II.

## A.

McShan first challenges the sufficiency of the evidence supporting his conviction of sexual exploitation of a minor under 18 U.S.C. § 2251(a). We consider that challenge de novo, asking whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

To obtain a conviction under § 2251(a), the government must show (in addition to an interstate commerce element) that the defendant "employed, used, persuaded, induced, enticed, or coerced any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct." 18 U.S.C. § 2251(a) (verb tense altered).

3

Here, the jury heard evidence that McShan repeatedly asked 16-year-old GM to send him sexually explicit photos and videos, and the jury heard about the context in which he made those requests. GM testified that her relationship with McShan was "very intense." He controlled most aspects of her life—what she wore, who she saw, where she went. Sometimes he made her feel beautiful and special; other times he berated or threatened her. Yet McShan always responded positively to sexually explicit photos or videos, which made GM feel good. Thus, when he asked her to send pornographic images, she did. From this evidence, a rational jury could easily conclude that McShan persuaded, induced, enticed, or coerced GM to send the images. *See United States v. Isabella*, 918 F.3d 816, 835–36 (10th Cir. 2019).

As to the purpose element, both GM and Maddie testified that McShan bought GM a sex toy, and GM said that McShan asked her to record herself using it and to send him the video. GM testified that McShan also made specific requests for pictures of her vagina and videos of her stripping. This testimony evinces McShan's "intent to create visual depictions of sexually explicit conduct," and shows that he "knew the character and content of the visual depictions." *United States v. Frei*, 995 F.3d 561, 566 (6th Cir. 2021) (quoting Sixth Cir. Pattern Jury Instr. 16.01).

McShan responds that the evidence showed only that he acted to further his "legal sexual relationship" with GM—stressing that the age of consent in Michigan is 16. But the legality of McShan and GM's relationship under Michigan law is irrelevant. Nor does it matter what McShan hoped to accomplish by exchanging pornographic images with GM. The evidence showed that his purpose was to create the pornographic images. And that is all that is required. *Frei*, 995 F.3d at 566. Thus, sufficient evidence supported McShan's conviction.

B.

McShan next challenges his sentence as procedurally unreasonable. Specifically, he argues that the district court failed to explain why it imposed a life term of supervised release or why it imposed special conditions prohibiting him from ever working with, caring for, or living with "adults with disabilities" without prior approval. McShan did not raise these objections at sentencing, so we review for plain error. *United States v. Harmon*, 607 F.3d 233, 237–38 (6th Cir. 2010).

District courts must explain their reasons for imposing a particular sentence, including any term of supervision and any conditions of supervised release. *United States v. Zabel*, 35 F.4th 493, 508 (6th Cir. 2022); *United States v. Zobel*, 696 F.3d 558, 572 (6th Cir. 2012). That said, a court need not conduct a separate analysis of the 18 U.S.C. § 3553(a) sentencing factors for each part of a sentence. A "single consideration of the sentencing factors" may suffice where it "embrac[es] both the incarceration sentence and the supervised release term." *United States v. Presto*, 498 F.3d 415, 419 (6th Cir. 2007).

Here, the district court started with a general discussion of the § 3553(a) factors. The court described the nature of McShan's offenses as "horrific" and "horrendous." It said that McShan "exhibited behavior that was callous, selfish, manipulative, certainly without regard to the welfare of the individuals with whom he interacted." The court also doubted whether McShan "accepts responsibility for his actions"—explaining that the letter McShan wrote "equivocated between claims of innocence and claims of remorse." Only after that discussion did the court announce the sentence.

The record makes clear that the court's consideration of the sentencing factors embraced both the custodial sentence and the supervision sentence. And the discussion sufficiently explains

the basis for a life term of supervision—especially considering that lifetime supervision is consistent with the guidelines. *Zabel*, 35 F.4th at 509. Hence the court did not plainly err when it imposed a life term of supervision.

The same discussion, however, does not explain why the court imposed conditions related to disabled adults. In fact, the district court never justified those conditions. That was clear error. True, the district court might have viewed McShan as a threat to all vulnerable people, and that could be a reason for limiting his contact with disabled adults. *See United States v. Smith*, 606 F.3d 1270, 1283 (10th Cir. 2010). But the district court did not provide that rationale; nor is it "clear from the record." *United States v. Booker*, 994 F.3d 591, 598 (6th Cir. 2021) (quoting *United States v. Henry*, 819 F.3d 856, 874 (6th Cir. 2016)); *see also United States v. Dotson*, 715 F.3d 576, 586 (6th Cir. 2013). And given the potential breadth of those conditions in practice, we conclude that the lack of explanation affected McShan's substantial rights. Thus, McShan has established plain error, and the conditions related to disabled adults must be vacated, and the case remanded to the district court for a limited resentencing.

\* \* \*

We affirm McShan's conviction and life term of supervised release, vacate the challenged special conditions, and remand for the limited purpose of allowing the district court either to explain its reasons for the disabilities conditions or to enter an amended judgment without those conditions.