RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0103p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

No. 21-5598

*v.*

DANIEL FRANK MILLER,

*Defendant-Appellee*.

Appeal from the United States District Court for the Western District of Tennessee at Jackson.
No. 1:19-cr-10133-1—S. Thomas Anderson, District Judge.

Argued: March 17, 2022

Decided and Filed: May 12, 2022

Before: MOORE, COLE, and NALBANDIAN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Kevin G. Ritz, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellant. M. Dianne Smothers, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellee. **ON BRIEF:** Kevin G. Ritz, William Joshua Morrow, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellant. M. Dianne Smothers, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellee.

COLE, J., delivered the opinion of the court in which NALBANDIAN, J., joined. MOORE, J. (pg. 9), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

COLE, Circuit Judge. Daniel Miller pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). At sentencing, the government objected to United States Probation and Pretrial Services' recommended offense level, arguing Miller's prior convictions for Tennessee drug delivery were "controlled substance offenses" under the United States Sentencing Guidelines. But the district court rejected the government's argument, reasoning our decision in *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (per curiam) (en banc), *reconsideration denied* 929 F.3d 317 (Mem.), controlled. Sitting en banc, we accepted the *Havis* parties' agreement that "the least culpable conduct" proscribed by Tennessee's drug delivery statute was "the *attempted delivery* of a controlled substance" and unanimously held that attempt crimes were not "controlled substance offenses" because they were omitted from the Guidelines' text. *Id.* at 385, 387. Since then, however, we have repeatedly acknowledged that "the parties' assumption in *Havis* was wrong." *United States v. Booker*, 994 F.3d 591, 596 (6th Cir. 2021) (collecting cases). In this case, we clarify that the parties in *Havis* were mistaken about the scope of Tennessee's drug delivery statute. Because our legal determinations cannot be dictated by parties' stipulations, we evaluate the statute anew and conclude it is a controlled substance offense. Accordingly, we vacate Miller's sentence and remand to the district court for resentencing.

## I. BACKGROUND

Just before 10 p.m. on March 23, 2019, law enforcement arrested Miller at his home for failure to appear in McNairy County General Sessions Court. Police woke Miller up in his bedroom and searched his room and his person. They found methamphetamine, marijuana, and a shotgun at the end of his bed. Miller pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Probation recommended a base offense level of 14.

The government objected to Probation's recommendation. It argued Miller's three prior Tennessee felony convictions for drug delivery were "controlled substance offenses" under

§ 4B1.2(b) of the Guidelines. In the government's view, Miller's base offense level should have been set at 24. Probation, however, stood firm. It maintained that our en banc decision in *Havis* foreclosed the government's position.

*Havis* is an unusual case. There, we granted en banc review to consider the "narrow" question of what role the Guidelines' commentary plays in interpreting its text. *Havis*, 927 F.3d at 384. After describing the function of the Sentencing Commission, we explained that "commentary to the Guidelines . . . has no independent legal force" because it does not "pass[] through the gauntlets of congressional review or notice and comment." *Id.* at 386 (citing, *e.g.*, *Stinson v. United States*, 508 U.S. 36, 44–46 (1993)). For that reason, we unanimously held the Guidelines' definition of "controlled substance offense" does not include attempt crimes because the Guideline's text included only completed offenses. *Id.* at 387. To reach that conclusion, we first accepted the parties' agreement that the least culpable conduct criminalized under Tennessee's drug delivery statute, Tenn. Code Ann. § 39-17-417, was the attempted delivery of a controlled substance. *Id.* at 385. Based on that representation, we concluded that Tennessee's drug delivery statute was not a "controlled substance offense." *Id.* at 387.

When the government moved for reconsideration, one member of the en banc panel suggested the parties' stipulation about § 39-17-417's scope may have been wrong. *See* 929 F.3d at 320 (*Havis II*) (Sutton, J., concurring in denial of en banc reconsideration). Tennessee defines "delivery" as "the actual, constructive, or attempted transfer from one person to another of a controlled substance." Tenn. Code Ann. § 39-17-402(6). After analyzing the various provisions in play, the separate writing explained that "[s]omeone who attempts to *transfer* drugs in Tennessee has committed the *completed offense* of delivery under § 39-17-417(a)(2)," but "someone who attempts to *deliver* drugs . . . has committed the lesser-included, but distinct, offense of *attempted delivery* under § 39-12-101(a)." *Havis II*, 929 F.3d at 320 (second and fourth emphases added). As a result, "a person who commit[ted] a completed delivery offense under Tennessee law"—like Havis—"may merit a guidelines bump" after all. *Id.* "But the government, even in its motion for reconsideration, did not make this argument," so the issue was left for "future cases" to resolve. *Id.*

Since then, subsequent decisions have consistently stressed that the parties' agreement in *Havis* was wrong while reiterating that *Havis*'s ultimate holding—that the Guidelines' commentary cannot add offenses to the Guidelines themselves—was correct. *See, e.g.*, *Booker*, 994 F.3d at 596 (analyzing Michigan's identically-worded delivery statute); *United States v. Elliott*, 835 F. App'x 78, 81 (6th Cir. 2020) (same); *United States v. Thomas*, 969 F.3d 583, 585 (6th Cir. 2020) (per curiam) (same); *United States v. Garth*, 965 F.3d 493, 497 (6th Cir. 2020) (discussing Tennessee's possession-with-intent-to-deliver statute). These observations have come most often in the context of Michigan law. Like Tennessee, Michigan defines "deliver" or "delivery" as "the actual, constructive, or attempted transfer . . . of a controlled substance[.]" Mich. Comp. Laws § 333.7105(1). We have made clear that, under this provision, "an 'attempted transfer'" is not an attempt crime; rather, it "constitutes a *completed delivery*[.]" *Booker*, 994 F.3d at 596 (citations omitted). But we have not had an opportunity to clarify the same with respect to Tennessee's delivery statute. *But see Garth*, 965 F.3d at 497–98 (holding possession with intent to deliver is a completed crime under Tennessee law).

This brings us back to the instant case. Left to muddle through *Havis* and its conflicting progeny, the district court observed it was still "constrained . . . to follow *Havis*" and ultimately concluded that Miller's previous Tennessee convictions for completed drug delivery were not controlled substance offenses under the Guidelines. As a result, it adopted Probation's recommended base offense level of 14. After decreasing Miller's offense level by two for acceptance of responsibility, the district court imposed a 36-month sentence. The government appealed.

## II. ANALYSIS

Whether a prior conviction counts as a "controlled substance offense" is a question of law we review de novo. *Havis*, 927 F.3d at 384.

We use a three-step categorical approach to determine whether prior convictions count as a controlled-substance offense under the Guidelines. *Garth*, 965 F.3d at 495. We start by "map[ping] out what conduct is criminalized under the [G]uidelines' definition." *Id.* Then, we "do the same" for the "state law that led to the conviction." *Id.* The third and final step requires

us to "overlay the two" to assess whether "the [G]uidelines . . . fully envelop the state law of conviction." *Id.* If it does, then the conviction qualifies as a controlled substance offense. If it does not, then the statute does not "categorically qualif[y] as a controlled substance offense," and it cannot be used to enhance the defendant's base offense level. *Havis*, 927 F.3d at 385.

We begin at step one. Section 4B1.2(b) of the Guidelines defines "controlled substance offense" as:

> [A]n offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b). Stated differently, a controlled substance offense is "a federal or state felony conviction for possessing a controlled substance with intent to distribute[.]" *Garth*, 965 F.3d at 496. Under federal law, "distribute" means "to deliver," and "deliver" means "the actual, constructive, or attempted transfer of a controlled substance[.]" 21 U.S.C. § 802(8), (11). As we have mentioned, only completed crimes fall within the ambit of a controlled substance offense; attempt crimes do not. *Havis*, 927 F.3d at 387.

Next, we confront step two. Tennessee's delivery statute in part provides: "It is an offense for a defendant to knowingly . . . [d]eliver a controlled substance." Tenn. Code Ann. § 39-17-417(a)(2). Tennessee also criminalizes "knowingly . . . deliver[ing] methamphetamine[.]" *Id.* § 39-17-434(a)(2). And just like federal (and Michigan) law, Tennessee defines "deliver" and "delivery" in both as "the actual, constructive, or attempted transfer . . . of a controlled substance." *Compare id.* § 39-17-402(6), *with* 21 U.S.C. § 802(8), (11), *and* Mich. Comp. Laws § 333.7105(1); *see also Garth*, 965 F.3d at 496 (explaining that Tennessee's drug laws were patterned after federal law).

Neither party disputes that Miller was previously convicted under Tenn. Code Ann. § 39-17-402(a)(2) for delivery of morphine and twice under § 39-17-434(a)(2) for delivery of methamphetamine. And the parties agree that the two state statutes are functionally identical for the purpose of deciding the issue on appeal. But the parties contest whether "the

[G]uidelines . . . fully envelop" Miller's Tennessee drug delivery convictions after *Havis*. *Garth*, 965 F.3d at 495.

Citing *Havis*, Miller argues that—unlike federal or Michigan law—it is possible for a defendant to be convicted of delivery in Tennessee when the evidence only establishes attempted delivery. He supports this contention by offering a detailed history of the definition of "delivery," a side-by-side comparison of Michigan and Tennessee law, and an analysis of how other states have treated the same (or similar) definitions of "delivery" inconsistently. What his argument misses, however, is that Tennessee (like Michigan and federal law) defines "delivery" to encompass "attempted transfers" and criminalizes attempts to violate the drug laws through a separate statute. *See* Tenn. Code Ann. § 39-12-101(a); *see also Havis II*, 929 F.3d at 320.

Under Tennessee law, someone who attempts to *deliver* drugs has committed an offense under § 39-12-101. *See State v. Pinegar*, No. M2015-02403-CCA-R3-CD, 2016 WL 6312036, at *15–16 (Tenn. Crim. App. Oct. 28, 2016). Conversely, we now confirm that "[s]omeone who attempts to *transfer* drugs in Tennessee has committed the completed offense of delivery under § 39-17-417(a)(2)[.]" *Havis II*, 929 F.3d at 320. This result brings Tennessee law into conformity with our interpretation of the "substantially identical" definitions of "delivery" under Michigan and federal law. *See, e.g.*, *Booker*, 994 F.3d at 596 ("[W]e have held that, under Michigan law, an attempted transfer constitutes a completed delivery rather than an attempt crime. . . . The same applies to the analogous provisions of the [Controlled Substances Act]." (internal quotations, emphasis, and citations omitted)).

Miller resists this conclusion, suggesting there is a "realistic probability" that Tennessee's delivery statute encompasses attempted delivery. *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). To support his argument, he relies on *State v. Faulkner*, No. E2006-02094-CCA-R3-CD, 2008 WL 2242531 (Tenn. Crim. App. June 2, 2008). In *Faulkner*, the defendant argued a Tennessee delivery charge was "duplicitous" because "it necessarily include[d] attempted delivery." *Id.* at *14. The court stated that the trial judge's decision not to instruct the jury on "attempted delivery" was "proper" because "'delivery,' in effect, includes attempted delivery." *Id.* But as Miller himself recognizes, "[t]his one sentence conclusion is questionable given that there are numerous cases thereafter where defendants are convicted of attempted

delivery." (Appellee Br. 15 (citing, *e.g.*, *Pinegar*, 2016 WL 6312036, at *15–16 (discussing § 39-12-101 in conjunction with "attempted delivery")).) And the lack of Tennessee caselaw establishing that § 39-17-417(a)(2) criminalizes "attempted delivery" further suggests that Miller's argument raises no more than a "theoretical possibility" that Tennessee would "apply its statute to conduct that falls outside" the Guidelines' scope. *United States v. Smith*, 881 F.3d 954, 959 (6th Cir. 2018) (citations omitted).

With few arguments left at his disposal, Miller asserts that we are bound by *Havis*'s determination that Tennessee delivery encompasses attempted delivery, and we cannot overrule that "holding." (Appellee Br. 8, 33–34.) But Miller misunderstands *Havis*'s ultimate disposition. Again, in *Havis*, the en banc court confronted the "narrow" question of "whether the definition of 'controlled substance offense' in § 4B1.2(b) includes attempt crimes" and held it did not. 927 F.3d at 384–85, 387. We accepted—but did not interrogate—the parties' agreement that the least culpable conduct criminalized by Tennessee's delivery statute was "attempted delivery." *Id.* at 385. But we have "since determined that the parties' assumption in *Havis* was wrong." *See, e.g.*, *Booker*, 994 F.3d at 596.

When "[c]areful study and reflection" convince a reviewing court that an "assumption" on which a case was decided was "erroneous," the court is "not bound to follow" the prior case, particularly where, as here, "the point now at issue was not fully debated." *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 363 (2006) (citing *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 399–400 (1821)); *see also United States v. Lucido*, 612 F.3d 871, 876 (6th Cir. 2010) ("Cases implicating issues that 'merely lurk in the record, neither brought to the attention of the court nor ruled upon,' do not establish binding precedent on an unexamined point." (quotation omitted)). But we are now in a position to correct the *Havis* parties' faulty assumption about § 39-17-417's scope without disrupting *Havis*'s true holding.

Were we to allow the *Havis* parties' agreement to control, we would contravene our duty to decide questions of law and inappropriately cede our authority to private parties. Parties' mutual agreement about a statute's interpretation does not—and cannot—tie the judiciary's hands. *See, e.g.*, *Swift & Co. v. Hocking Valley Ry. Co.*, 243 U.S. 281, 290 (1917) ("[T]he [C]ourt cannot be controlled by agreement of counsel on a subsidiary question of law."); *Neuens*

*v. City of Columbus*, 303 F.3d 667, 670 (6th Cir. 2002) ("Issues of law are the province of courts, not of parties to a lawsuit, individuals whose legal conclusions may be tainted by self-interest. Courts, accordingly, are not bound to accept as controlling, stipulations as to questions of law." (internal quotations and citations omitted)). Allowing the *Havis* parties' mutual error to continue to bind us to an erroneous interpretation of Tennessee law threatens the proper administration of justice.

As a last resort, Miller argues Tennessee's definition of "delivery" is ambiguous and the rule of lenity should apply. The government counters that this case is about the Guidelines' definition of "controlled substance offense" rather than Tennessee's definition of delivery, so Miller's argument holds no water. Regardless, the rule of lenity is not implicated here. As the Supreme Court has repeatedly stressed, the rule of lenity "applies only when a criminal statute contains a 'grievous ambiguity or uncertainty,' and 'only if, after seizing everything from which aid can be derived,' the Court 'can make no more than a guess as to what Congress intended.'" *Ocasio v. United States*, 578 U.S. 282, 295 n.8 (2016) (quoting *Muscarello v. United States*, 524 U.S. 125, 138–139 (1998)). Those circumstances are notably absent from this case. *See generally Havis*, 927 F.3d at 386 (analyzing § 4B1.2 without flagging an ambiguity); *Havis II*, 929 F.3d at 320 (discussing Tennessee's delivery statute). Without a "grievous ambiguity," the rule of lenity is not triggered.

## III. CONCLUSION

We vacate Miller's sentence and remand to the district court for resentencing.

_____

**DISSENT**

_____

KAREN NELSON MOORE, Circuit Judge, dissenting. Only the Supreme Court or this court sitting en banc may overrule circuit precedent. *Miller v. Caudill*, 936 F.3d 442, 447–48 (6th Cir. 2019). In *United States v. Havis*, a unanimous en banc court held that the district court incorrectly increased a defendant's offense level based on a Tennessee conviction "[b]ecause the least culpable conduct covered by § 39-17-417 is attempted delivery of a controlled substance." 927 F.3d 382, 387 (6th Cir. 2019) (en banc) (per curiam). No judge on the en banc court examined the assumption underlying that holding. When the government moved for reconsideration, only now-Chief Judge Sutton wrote to question the parties' underlying assumption. *United States v. Havis*, 929 F.3d 317, 320 (6th Cir. 2019) (Mem.) (Sutton, J., concurring in the denial of en banc reconsideration). Not a single other judge joined his separate writing. As a panel of this court, we must honor that choice of our full court to adhere to our original unanimous en banc decision.

Of course, the assumptions underlying the Supreme Court's previous opinions do not bind the Supreme Court. *See Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 363 (2006). When parties before a panel of this court agree to an incorrect legal conclusion, moreover, that panel need not accept that conclusion. *See Neuens v. City of Columbus*, 303 F.3d 667, 670 (6th Cir. 2002). But when an en banc court passes over an opportunity to reexamine an assumption, that decision binds a subsequent panel. *See Martinez v. LaRose*, 980 F.3d 551, 558 (6th Cir. 2020) (Moore, J., dissenting from the denial of rehearing en banc) ("Any attempt to decide the status of binding en banc precedent should be done properly with briefing and concerted discussion by the full en banc court."). If a majority of the judges on this court wishes to change its mind, it must take the case en banc. I decline to rely on the tenuous distinction between a "true" or "ultimate" holding and another, equally binding holding—one that the en banc court had ample opportunity to reexamine—to overturn a unanimous en banc opinion. Accordingly, I respectfully dissent.