IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
August 5, 2025 Session

## STATE OF TENNESSEE v. JUSTIN DARNAY GRAVES

**Appeal from the Circuit Court for Madison County**
**No. 20-702     Donald H. Allen, Judge**

_____

### No. W2024-01283-CCA-R3-CD

_____

The Defendant, Justin Darnay Graves, appeals his convictions for the sale and delivery of heroin and the sale and delivery of methamphetamine in an amount of one-half gram or greater.  On appeal, the Defendant argues that the State failed to establish that Madison County was the proper venue in which to prosecute him for these drug charges, contending the proof established that the transaction occurred entirely in Gibson County.  After review, we affirm the Defendant's convictions for the delivery counts.  We reverse the Defendant's convictions for the sale of heroin and methamphetamine and remand the case for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court**
**Affirmed in part; Reversed in part; Case Remanded**

KYLE A. HIXSON, J., delivered the opinion of the court.  CAMILLE R. MCMULLEN and STEVEN W. SWORD, JJ., filed separate opinions concurring in part and dissenting in part.

M. Todd Ridley Assistant Public Defender – Appellate Division, Tennessee District Public Defenders Conference; Jeremy B. Epperson, District Public Defender; and Austin W. Bethany, Assistant District Public Defender, for the appellant, Justin Darnay Graves.

Jonathan Skrmetti, Attorney General and Reporter; Ryan W. Davis, Assistant Attorney General; Jody S. Pickens, District Attorney General; and Bradley F. Champine, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## I.    FACTUAL AND PROCEDURAL HISTORY

This case arises from the death of the victim, Kody Gray, following a drug overdose on July 24, 2019, at his home in Madison County, Tennessee. Subsequent police investigation revealed that, on the morning of the victim's death, the victim and the Defendant had exchanged drugs at a Gibson County location and that the drugs recovered from the victim's residence following his death were the same as those involved in that exchange. On November 30, 2020, a Madison County grand jury indicted the Defendant for: alternate counts of sale and delivery of heroin, Class B felony offenses; alternate counts of sale and delivery of fentanyl, Class C felony offenses; alternate counts of sale and delivery of methamphetamine in an amount of one-half gram or greater, Class B felony offenses; and three counts of second degree murder by distribution of a controlled substance that was the proximate cause of the victim's death. *See* Tenn. Code Ann. §§ 39-13-210(a)(2)-(3); -17-406(c)(11), -408(c)(9), (d)(2), -417(a)(2)-(3), (b), (c)(1)-(2)(A), -434(a)(2)-(3). After a jury trial, the Defendant was convicted only of the sale and delivery counts involving heroin and methamphetamine. He was acquitted of the fentanyl charges and of two of the second degree murder counts. The jury was unable to reach a verdict as to the remaining second degree murder charge, and the trial court declared a mistrial as to that count.

At trial in February 2024, the following evidence was adduced. Anna Parker, the mother of the victim's oldest child, lived at the Crockett Manor Apartments in Trenton, Tennessee, located in Gibson County. She testified that the victim worked night shifts at a local factory and that he frequently stopped by her apartment after work to see their son. Ms. Parker said she was aware the victim had "at one point" sold "Xanax bars." She confirmed that, in addition to working his factory job, the victim also worked as a security guard at a local night club.

According to Ms. Parker, the victim arrived at her apartment around 6:00 a.m. on the morning of July 24, 2019, after working at his factory job. Following his arrival, the victim informed Ms. Parker that his friend, "J-Rock," would be coming by for a visit soon, and after about thirty to forty minutes, the Defendant arrived at Ms. Parker's apartment. Ms. Parker did not know the Defendant, and when he arrived, she took the couple's son into her bedroom and took a nap. Approximately an hour later, the victim came into Ms. Parker's room and said he was leaving. To Ms. Parker's knowledge, the Defendant had already left. The victim told Ms. Parker that he had to go help the Defendant with the Defendant's car and that, after he was finished, he would go to the gym.

Later that day, around noon, Ms. Parker took the couple's son and went to the victim's house, where he lived with his mother, Regina Gray, on Cobblestone Drive in Madison County. Ms. Gray watched the couple's son while Ms. Parker made lunch and

cut the victim's hair. Ms. Parker left with the couple's son around 1:30 p.m., and the victim went to rest in his bedroom. Ms. Gray did the same, and when Ms. Gray awoke around 4:30 p.m., the victim's bathroom door was closed, and she could hear the shower running. She called out to the victim multiple times, and when the victim did not respond, she forced the bathroom door open and found the victim lying on the floor. The victim was "very discolored," and Ms. Gray saw blood in one of his nostrils. She called 911 and began CPR. Emergency services arrived and transported the victim to the hospital where he was pronounced dead.

Deputy Corey Chance with the Madison County Sheriff's Office ("MCSO") arrived at the victim's house, and prior to emergency services transporting the victim to the hospital, Deputy Chance observed a white powdery substance on the victim's nose. As Deputy Chance began photographing the scene, he observed a pair of boots located outside the front door of the residence that contained several small bags with "a white substance" inside them. He called "metro narcotics" to assist with the investigation, and a search warrant for the residence was obtained.

Investigator Mike Arnold with the narcotics unit of the Jackson Police Department arrived at the scene and searched the residence. Multiple suspected controlled substances, firearms, and cash were located at the residence. These substances were sent to the Tennessee Bureau of Investigation ("TBI") for testing. Subsequent testing confirmed the substances seized from the residence included .3 grams of a mixture of heroin and fentanyl, 29.23 grams of methamphetamine, and 831 Xanax pills, of which one pill was lab tested. Investigator Arnold confirmed the "street lingo" for Xanax was "bars" and that, in drug trafficking, an ounce of methamphetamine, which was roughly the amount found at the victim's residence, was sometimes referred to as the "whole thing."

On July 25, 2019, independent of the investigation into the victim's death, the TBI conducted a controlled purchase of heroin, targeting the Defendant. At the Defendant's request, the confidential informant ("CI") met with the Defendant in Madison County, at a Scott Street address located in Jackson, Tennessee. During the purchase, which was recorded and entered as an exhibit, the Defendant mentioned that someone he had sold drugs to the previous day overdosed. He went on to describe this person as a "tatted up white boy" from Trenton, named Kody, who had worked security at a night club. The Defendant commented that he was unsure whether the victim's overdose was from the Defendant's "dope," but if he had been there, he could have saved the victim. The CI asked whether the Defendant's heroin contained fentanyl, to which the Defendant responded that it did not. However, subsequent TBI lab testing confirmed the substance sold to the CI was a mixture of heroin and fentanyl. Following the controlled purchase, TBI Agent Ramanda Chestnut contacted the MCSO to inform them about the Defendant's statements regarding the victim.

Cell phone records were obtained for the victim's and the Defendant's cell phones. The victim's phone records showed a contact named "J-Rock (Jackson)." The number attached to this contact was the same number the CI had used to communicate with the Defendant for the July 25, 2019 controlled purchase. Additionally, the first text message sent from the victim's phone to the Defendant's phone on June 8, 2019, stated, "What up homie .. this is the white dude security at the club. I need some honey[.]" The two continued to text and call each other for the next one-and-a-half months. Text message exchanges between the two referenced meetings in Madison County in which the victim texted the Defendant saying that the victim was either in or coming to Jackson or "the j." Additionally, incoming messages from the Defendant showed the Defendant sending the victim a Scott Street address as a meeting point, which was the same address used for the July 25, 2019 controlled purchase with the CI.

On the evening of July 23, 2019, the day before the victim died, the victim and the Defendant engaged in the following text exchange with intermittent phone calls in between:

| Date/Time | From: | To: | Message |
|---|---|---|---|
| July 23, 5:30 p.m. | Victim | Defendant | In mornin you gonna be good? Imma have to come to see you when I get off |
| July 23, 5:39 p.m. | Victim | Defendant | 299 hwy 45 bypass Humboldt tn 38343. Shell station cantnmissit.. be on time bro cause I can't be late to work I'm hopping in showering now I gotta be out by 6:30 to get to work on time. That 450 almost 100 more. Do this. I got you 75 bars and 175 cash on the whole thing & I'll need a lil 30 of that other |
| July 23, 5:51 p.m. | Victim | Defendant | I needa know how much ASAP so I can gone have it ready |
| July 23, 6:04 p.m. | Victim | Defendant | I can't be late 5. remember that. I got to leave 3 way by 630 to make it to work on time |
| July 23, 6:40 p.m. | Victim | Defendant | 1465 Industrial drive Trenton tn 38382 When I get there I won't have no service until my break. Make sure you're there at 9:30 bro. They're strict as f[---] on our break time. Park beside my truck I'll be [] |
| July 23, 9:23 p.m. | Defendant | Victim | When is your next break want make this one |
| July 23, 9:34 p.m. | Victim | Defendant | God d[---] call me |

| | | | |
|---|---|---|---|
| July 24, 12:10 a.m. | Victim | Defendant | 1465 industrial drive Trenton TN 38382 I'm needin ya homie. Remember 3 on the dot |
| July 24, 5:46 a.m. | Victim | Defendant | Crockett manor Trenton 38382 |
| July 24, 5:47 | Defendant | Victim | Say no more |
| July 24, 5:48 a.m. | Defendant | Victim | Im about to leave now |
| July 24, 5:52 a.m. | Victim | Defendant | Bet |
| July 24, 6:44 a.m. | Defendant | Victim | I'm outside |

The cell phone GPS location showed that, when the Defendant texted the victim "Say no more" and "Im about to leave now," the Defendant was in Madison County. When the Defendant texted "I'm outside," GPS location showed that both the Defendant and the victim were in the same area near Crockett Manor Apartments in Gibson County.

As stated, the jury found the Defendant guilty of the sale and delivery of heroin and the sale and delivery of methamphetamine in an amount of one-half gram or greater. At a sentencing hearing on April 8, 2024, the trial court merged the two heroin convictions and the two methamphetamine convictions and sentenced the Defendant to twelve years in the Tennessee Department of Correction for each conviction, with the sentences to run concurrently to each other but consecutively to the Defendant's sentence in an unrelated case.

On May 8, 2024, the Defendant filed a "Motion for New Trial, Verdict of Acquittal, or Modification of Sentence," in which he argued that venue was not proper as to the sale and delivery counts because the evidence was insufficient to establish that any element of the offenses took place in Madison County. At a hearing on July 29, 2024, the trial court denied the motion reasoning that, while the transaction occurred in Gibson County, the offenses commenced in Madison County, and therefore, some of the elements of the offenses occurred in Madison County. The trial court then issued a written order on August 6, 2024, in which it reiterated its findings, noted that the jury was properly instructed on venue, and found that sufficient evidence was presented to establish venue by a preponderance of the evidence. The trial court continued that both the Defendant and the victim were in Madison County when the drug transaction was negotiated, and the Defendant then traveled from Madison County to deliver the drugs. The victim also traveled from Madison County to receive the drugs and then traveled back to Madison County to use them. Additionally, the Defendant was in Madison County the following day selling drugs to a CI when the Defendant made statements about selling the drugs to the victim on the previous day.

This timely appeal followed.

## II.   ANALYSIS

The Defendant argues that the State failed to establish venue was proper in Madison County.   To this point, he contends that the drug transaction occurred entirely in Gibson County, reasoning that his actions in Madison County did not constitute an element of either offense and that the sale and delivery of controlled substances are not continuing offenses.   The State responds that a rational juror could have found that at least one element of the charged offenses occurred in Madison County based on the Defendant's actions in Madison County and based on the Defendant's forming his *mens rea* for the offenses in Madison County.

Article I, section 9 of the Tennessee Constitution provides that an accused must be tried in the county in which the crime is committed.   *See also* Tenn. R. Crim. P. 18(a) ("Except as otherwise provided by statute or by these rules, offenses shall be prosecuted in the county where the offense was committed.").   Our supreme court has said, "[p]roof of venue is necessary to establish the jurisdiction of the court, but it is not an element of any offense and need only be proved by a preponderance of the evidence." *State v. Hutcherson*, 790 S.W.2d 532, 535 (Tenn. 1990); *see also* Tenn. Code Ann. § 39-11-201(e) ("No person may be convicted of an offense unless venue is proven by a preponderance of evidence."). Extensive proof is not required; rather, "[s]light evidence is enough to carry the prosecution's burden of proof if such evidence is uncontradicted." *State v. Ellis*, 89 S.W.3d 584, 598 (Tenn. Crim. App. 2000) (first citing *Ellis v. Carlton*, 986 S.W.2d 600, 602 (Tenn. Crim. App. 1998); and then citing *State v. Smith*, 926 S.W.2d 267, 269 (Tenn. Crim. App. 1995)).   Importantly, "[i]f one or more elements of an offense are committed in one county and one or more elements in another, the offense may be prosecuted in either county." Tenn. R. Crim. P. 18(b); *see also* Tenn. Code Ann. § 39-11-103(d).   Venue is a question of fact to be determined by the jury, which may "draw reasonable inferences from the evidence" and may make its determination based solely upon circumstantial evidence. *State v. Young*, 196 S.W.3d 85, 101-02 (Tenn. 2006) (citing *State v. Johnson*, 673 S.W.2d 877, 882 (Tenn. Crim. App. 1984)).

In Tennessee, it is the legislature's duty to define criminal offenses and assess the punishments for those offenses. *State v. Gentry*, 538 S.W.3d 413, 420 (Tenn. 2017) (citing *State v. Burdin*, 924 S.W.2d 82, 87 (Tenn. 1996)).   "In general, our legislature has chosen to define criminal offenses through the combination of two components: a voluntary act and a culpable mental state." *State v. Hollon*, 671 S.W.3d 561, 565 (Tenn. Crim. App. 2023) (first citing Tenn. Code Ann. § 39-11-101(2); and then citing *State v. Turner*, 953 S.W.2d 213, 216 (Tenn. Crim. App. 1996)).   As pertinent to this case, Tennessee Code Annotated section 39-17-417(a) provides that it is an offense for a defendant to knowingly sell a controlled substance or knowingly deliver a controlled substance.   Tenn. Code Ann. § 39-17-417(a)(2)-(3).   Our legislature has defined the sale of a controlled substance with

two conduct elements: a sale and a controlled substance. *Id.* § -417(a)(3); *State v. Gabehart*, 691 S.W.3d 24, 26 (Tenn. Crim. App. 2024). "[A] sale consists of two components: a bargained-for offer and acceptance, and an actual or constructive transfer or delivery of the subject matter property." *State v. Holston*, 94 S.W.3d 507, 510 (Tenn. Crim. App. 2002). Likewise, the delivery of a controlled substance involves two conduct elements: a delivery and a controlled substance. Tenn. Code Ann. § 39-17-417(a)(2); *cf. Gabehart*, 691 S.W.3d at 26. "'Deliver' or 'delivery' means the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship[.]" Tenn. Code Ann. § 39-17-402(6). A "'[c]ontrolled substance' means a drug, substance, or immediate precursor in Schedules I through VII of [Tennessee Code Annotated sections] 39-17-403 [to] 39-17-416[.]" *Id.* § -402(4).

Additionally, one mental state, knowledge, applies to each of these conduct elements. *Id.* § -417(a)(2)-(3); *see Gabehart*, 691 S.W.3d at 26; *Hollon*, 671 S.W.3d at 565. Here, "'[k]nowing' refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." Tenn. Code Ann. § 39-11-302(b); *see State v. Hanson*, 279 S.W.3d 265, 276 (Tenn. 2009) (explaining that the "knowing" *mens rea* is applied to the statutorily-defined conduct). As such, "the State must prove that the defendant was 'aware of the nature of the conduct' or that his or her conduct involved a sale [or delivery]." *See Gabehart*, 691 S.W.3d at 26. As to the "controlled substances element, the State must prove that the [d]efendant was aware that the 'circumstances exist[ed]' or that the object being sold [or delivered] was a controlled substance." *Id.*

A.      Formation of Culpable Mental State

We first address the State's argument that the Defendant formed his knowing *mens rea* in Madison County, thereby, establishing venue in that county for these offenses. As for evidence of the Defendant's mental state being formed there, the State relies upon the Defendant's acceptance of the drug transaction's terms while in Madison County or the Defendant's transfer of the drugs by vehicle from the Madison County location to Gibson County. Specifically, the State relies on *State v. Young*, 196 S.W.3d 85 (Tenn. 2006), in support of this proposition that venue can be established in such a manner.

In *Young*, the defendant kidnapped the victim in Shelby County by commandeering her vehicle while attempting to evade apprehension by law enforcement. *Id.* at 96, 102. The victim's body was later found in Fayette County. *Id.* at 98, 103. Ultimately, a Shelby County jury convicted the defendant of first degree premeditated murder, especially aggravated kidnapping, and theft over $1,000 but less than $10,000. *Id.* at 93. On appeal, the Tennessee Supreme Court, relying on Tennessee Rule of Criminal Procedure 18(b), held that venue for the murder had been establish in Shelby County because a jury could infer the defendant's premeditation, or his intent to kill the victim, was formed there. *Id.* at 102-03. The *Young* court reasoned that the defendant's "overarching concern was

evading apprehension" and that "[i]t was reasonable for the jury to infer that, at the time [the d]efendant determined to keep the victim with him in the car, he determined to kill her." *Id.* at 102. Accordingly, the defendant had "thereby committed an element of the offense of premeditated murder while still in Shelby County." *Id.* at 103.

We find the present case distinguishable from *Young*. As explained above, most offenses in Tennessee include both a culpable mental state (the *mens rea*) and the criminal act (the *actus reus*). *See Hollon*, 671 S.W.3d at 565. The *mens rea* element for first degree murder, the offense at issue in *Young*, requires premeditation and intent. *See* Tenn. Code Ann. § 39-13-202(a)(1) (defining first degree murder, in part, as "[a] premeditated and intentional killing of another"). "Premeditation" is defined as

> an act done *after the exercise of reflection and judgment*. "Premeditation" means that *the intent to kill must have been formed prior to the act itself*. It is not necessary that the purpose to kill preexist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

Tenn. Code Ann. § 39-13-202(d) (emphases added).[1] Significantly, premeditation is a mental state that, by its very nature, must precede the *actus reus* of the offense. *Cf. State v. Hall*, 8 S.W.3d 593, 600 (Tenn. 1999) (noting that "[a] killing committed during a state of passion . . . may still rise to the level of first degree murder if the State can prove that premeditation . . . preceded the struggle"). Thus, premeditation's unique temporal requirement might make relevant for venue purposes the defendant's physical location at the time he or she formed the intent to kill. Conversely, a defendant's knowing mental state for the sale or delivery of a controlled substance is required to *contemporaneously* accompany his or her criminal conduct. *See* Tenn. Code Ann. § 39-17-417(a)(3)-(4); *Gabehart*, 691 S.W.3d at 26 ("Concerning the sale itself, the State must prove that the defendant was 'aware of the nature of the conduct' or that his or her conduct involved a sale"). As such, for venue purposes in these circumstances, the when and where of the Defendant's formation of his culpable mental state is affixed to the location of his criminal acts. Based on these differences, we do not find the holding in *Young* to control the present case.

## B. Delivery Counts

Turning to address venue as it relates to the Defendant's delivery counts, we conclude that the State met its burden of establishing venue in Madison County. As

---

[1] This subsection was redesignated in 2021 and is now located at Tennessee Code Annotated section 39-13-202(e). *See* 2021 Tenn. Pub. Acts, ch. 394, § 1.

previously explained, our legislature has defined delivery "as the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship[.]" Tenn. Code Ann. § 39-17-402(6). Thus, delivery of a controlled substance includes an "attempted transfer" of that controlled substance from one person to another. While Tennessee law does not explicitly define "attempted transfer," such language evinces that a delivery may be committed without a successful or completed transfer of the controlled substance. It follows that a defendant may be criminally liable for delivery of a controlled substance for merely attempting to effectuate the transfer of the controlled substance with the requisite *mens rea*. *Cf. State v. Faulkner*, No. E2006-02094-CCA-R3-CD, 2008 WL 2242531, at *14 (Tenn. Crim. App. June 2, 2008), *overruled on other grounds by State v. Gibson*, 506 S.W.3d 450 (Tenn. 2016) (holding that the trial court's decision to not instruct the jury on "attempted delivery" was proper because a "delivery," in effect, includes "attempted delivery"); *United States v. Miller*, 34 F.4th 500, 504-05 (6th Cir. 2022) (analyzing Tennessee's drug delivery convictions for sentencing purposes for career offenders and noting that someone who attempts to transfer drugs in Tennessee has committed the completed offense of delivery under Code section 39-17-417(a)(2)).

Here, the record supports that the Defendant was knowingly attempting a transfer of heroin and methamphetamine while in Madison County. Text messages recovered from the victim's cell phone show discussions with the Defendant on July 23 through 24, 2019, regarding a drug transaction that included references to drug quantities and prices. After several exchanges, the Defendant's text messages communicating, "Say no more" and "Im about to leave now," show the Defendant agreed to meet the victim to conduct the drug transaction, and the Defendant's cell phone records show he was in Madison County when he sent these messages. Additional evidence including the "J-Rock (Jackson)" contact for the Defendant in the victim's phone, the Defendant's traveling from Madison County to Gibson County for the transaction, the CI's meeting with the Defendant at a Scott Street address in Madison County previously sent by the Defendant to the victim, and text message exchanges between the victim and the Defendant involving meeting primarily in Madison County reflect that the Defendant's drug enterprise operated out of Madison County. As such, the jury could have drawn a reasonable inference that the Defendant's conduct established that he was knowingly attempting to transfer to the victim heroin and methamphetamine in an amount of one-half gram or greater while in Madison County—or that his actions in Madison County constituted a delivery of the controlled substances. *See* Tenn. R. Crim. P. 18(b); Tenn. Code Ann. § 39-11-103(d).

## C.    Sale Counts

Relative to the Defendant's convictions for the sale of heroin and methamphetamine, we conclude that venue was not proper in Madison County. While "sale" is not statutorily defined, our court has adopted the general definition of a "contract between two parties, respectively, the 'seller' (or vendor) and the 'buyer' (or purchaser),

by which the former, in consideration of the payment or promise of payment of a certain price in money, transfers to the buyer the title and possession of the property." *Holston*, 94 S.W.3d at 510. As such, a "sale" of a controlled substance consists of two components: the contract *and* the transfer or delivery, actual or constructive, of the controlled substance. *See id.* Importantly, unlike the statutory definition of delivery that includes an "attempted transfer," this definition contemplates that the transfer or delivery of the controlled substance be completed. *See, e.g.*, *id.* at 510-11 (affirming the defendant's conviction for the sale of cocaine when his conduct met the two requirements of a sale in that he accepted an offer and actually delivered the property); *State v. Wilkerson*, No. 03C01-9708-CR-00336, 1998 WL 379980, at *3 (Tenn. Crim. App. July 9, 1998) (holding the defendant's actions satisfied the definition of a sale when he accepted an offer and delivered the property); *State v. Alexander*, No. 01C01-9302-CR-00063, 1994 WL 95853, at *2 (Tenn. Crim. App. Mar. 24, 1994) (holding that the proof established that the "buyer made an offer to buy cocaine and the seller accepted the offer, an exchange of money occurred, and the contraband was actually delivered"); *cf. Freeman v. Harris*, No. 10-0071, 2013 WL 370719, at *5, *5 n.4 (M.D. Tenn. Jan. 30, 2013) (noting the plaintiff's charge should have been written as an attempted sale of a controlled substance when there was no transfer of the controlled substance); *State v. McElrath*, No. W2006-02621-CCA-R3CD, 2007 WL 4245723, at *1, *3-6 (Tenn. Crim. App. Dec. 3, 2007) (discussing the applicability of the Drug Free School Zone Act to criminal attempt offenses when the defendant's conviction was for the attempted sale of cocaine because, while an agreement to sell cocaine was in place, no actual exchange of cocaine occurred). As such, a "sale" is conducted only once both components are completed, generally at the moment of transfer. Here, the record establishes that the Defendant and the victim negotiated a deal regarding the exchange of heroin and methamphetamine while the Defendant was in Madison County. However, it was only once the Defendant actually transferred the heroin and methamphetamine to the victim in Gibson County, *i.e.*, the *actus rea*, which was effectuated under the terms of the agreement, that the conduct was completed and a sale occurred. Therefore, the sale of these controlled substances was conducted in Gibson County, making venue improper in Madison County.[2] *See* Tenn. R. Crim. P. 18(b); Tenn. Code Ann. § 39-11-103(d). Accordingly, we reverse the Defendant's convictions for the sale of heroin and methamphetamine in an amount of one-half gram or greater. *See State v. Hutcherson*, 790 S.W.2d 532, 534-35 (Tenn. 1990) (reversing conviction for lack of sufficient evidence of venue and remanding for further proceedings).

---

[2] We also distinguish this offense from other criminal offenses in which the General Assembly has explicitly expanded venue. *See, e.g.*, Tenn. Code Ann. § 39-14-150(j)(4) (expressly providing venue is proper for identity theft where the victim resides or is found); *Id.* § -905 (expanding venue for purposes of prosecution for money laundering offenses); *Id.* § -17-433(e) (expanding venue for promotion of methamphetamine manufacture).

## III.    CONCLUSION

Based on the foregoing authorities and reasoning, we reverse the Defendant's convictions for the sale of heroin and the sale of methamphetamine in an amount of one-half gram or greater and remand for any further proceedings.  We affirm the Defendant's remaining convictions in all other respects.

　s/Kyle A. Hixson
KYLE A. HIXSON, JUDGE